IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

JODI L. SHADIX,

                              Plaintiff,                     Case No. 3:07 CV 1886

   -vs-

                                                                    <u>MEMORANDUM OPINION</u>

COMMISSIONER OF
SOCIAL SECURITY,

                              Defendant.

KATZ, J.

This matter is before the Court on the Report and Recommendation ("R&R") of Magistrate Judge Vernelis K. Armstrong (Doc. 21), and Plaintiff Jodi Shadix's ("Plaintiff") objections to the R&R (Doc. 22). In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981), this Court has made a *de novo* determination of those of the Magistrate's findings to which Plaintiff objects.

**I. Background**

The relevant background for this case as described in the July 16, 2008 R&R of Magistrate Judge Armstrong (Doc. 21) is accurate and hereby incorporated as follows:

**PROCEDURAL BACKGROUND**

On November 3, 2003, Plaintiff filed an Application for [Disability Insurance Benefits] alleging that she had been disabled since August 5, 2001 (Tr. 59-61). She also protectively filed her application for [Supplemental Security Income] on October 27, 2003 (Tr. 12). Both applications were denied initially and on reconsideration (Tr. 46-49, 53-56, 279-282). On March 8, 2006, Plaintiff, represented by counsel, and Vocational Expert (VE) Dr. Joseph Havranek appeared at a hearing (Tr. 290). On December 29, 2006, the Administrative Law Judge (ALJ) Ray Bernstein found that (1) for the period of disability and DIB filed on November 3, 2003, Plaintiff was not disabled and (2) based on the application for SSI protectively filed on October 27, 2003, Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on May 1, 2007, thereby rendering the ALJ's decision the Commissioner's final decision (Tr. 3A-5). Plaintiff filed a

timely action in this Court seeking judicial review of the Commissioner's final decision.

## JURISDICTION

This Court exercises jurisdiction over the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832 -833 (6th Cir. 2006).

## FACTUAL BACKGROUND

*Plaintiff's Testimony*

Plaintiff claimed that she stopped working in 2002 because of migraine headaches. After receiving intravenous pain killers to control the pain, Plaintiff experienced a stroke-like disorder. Her physician refused to release her to return to work as she had a significant strength loss and loss of the ability to use her arms and hands (Tr. 294, 295).

Plaintiff claimed that she could not return to her former work because she could not predict the onset of a migraine headache (Tr. 307). She believed, however, that she could work as a restaurant hostess even though she experienced numbness in her feet (Tr. 295). Her physician reported that she did not have the strength to walk around the restaurant (Tr. 296).

Plaintiff's depressed mood was manifested by excessive crying (Tr. 310). Plaintiff also had difficulty with her shoulders and hands. Although she had undergone injection therapy to prevent muscle contractions, she was still in pain. The weakness in her arms and hands was evidenced by her inability to hold cups or bowls (Tr. 296).

Plaintiff testified regarding her activities of daily living. She drove a Dodge Ram (sic). There were no restrictions in her ability to drive (Tr. 296). Her outside mirrors were positioned so that she did not have to twist her body (Tr. 304). Plaintiff's daughter did the vacuuming and a friend assisted her with shopping. When she cooked, she generally used the grill (Tr. 297). Plaintiff had difficulty sleeping in a position that did not aggravate her symptoms (Tr. 303-304).

Plaintiff attributed the pain that radiated from her right arm to her thumb to degenerative disc disease and a pinched nerve (Tr. 299). Plaintiff explained that her migraines were also caused by a pinched nerve (Tr. 308). Six injections were administered quarterly to relieve muscle contraction associated with the pinched nerve (Tr. 302). The contracted muscles affected by the injection were generally numb (Tr. 303). The pain returned gradually within two and one half months (Tr. 302). She had tracked the onset of a migraine to exertion and lifting (Tr. 298, 303). To relieve the symptoms, Plaintiff took muscle relaxers and a pain reliever (Tr. 309). She would also lie in a dark room with an ice compress on her head (Tr. 307). At bedtime, she took an antidepressant (Tr. 309).

On December 27, 2004, Plaintiff underwent surgery related to her neck. Before surgery, Plaintiff had collapsed at least six times daily (Tr. 300). Plaintiff could not indicate with certainty that the surgery cured her or she modified her behavior to avoid collapsing (Tr. 301). The numbness in her back legs was not as critical as the neck pain. Because Plaintiff could only feel her big toe, it was difficult to walk as she could not maintain her balance (Tr. 305). Consequently, she

could only stand for five minutes provided she had assistance (Tr. 305). Her balance, however, had improved after the surgery (Tr. 310).

*Vocational Expert Testimony*

The VE opined that an individual with a need to (1) sit and stand in the course of a workday; (2) refrain from reaching extreme postures, including stooping, kneeling and bending more often than occasionally; (3) restrict the range of motion in his or her neck, (4) engage in work that did not demand posture or repetitive manipulation involving fine work, (5) carry ten pounds occasionally and three pounds frequently and (6) perform work with his or her hands close to the body frequently, could perform Plaintiff's past work as a file clerk but could not perform her other past work or any work with the transferrable skills (Tr. 312-313). However, an individual with this profile could perform unskilled sedentary work such as a surveillance system monitor, hand mounter of photographic products and microfilm document preparer. There are approximately 750 to 1,000 surveillance system monitor jobs, approximately 200 to 250 hand mounter jobs and approximately 500 microfilm document preparer jobs within 75 miles of Toledo, Ohio (Tr. 313-314). The jobs–surveillance system monitor, hand mounter and microfilm document preparer–were consistent with descriptions in the Dictionary of Occupational Titles (DOT).

The VE testified, in response to counsel's questions, that if the hypothetical plaintiff had to reach away from the elbows at the sides, then he or she would not be able to perform work as a file clerk. If the hypothetical plaintiff were unable to maintain a downward gaze, then the file clerk and microfilm document preparer would be eliminated from work that could be performed (Tr. 315). If the dominant hand could only be used occasionally, then the hypothetical Plaintiff could not perform work as file clerk Tr. 321).

## MEDICAL EVIDENCE
**1998**

On April 2, Plaintiff's right wrist had no bony abnormality (Tr. 240). Plaintiff's right knee showed normal alignment and no evidence of fracture or other bony abnormality (Tr. 239). With therapy/athletic training, Plaintiff's pain level had improved by June 4 (Tr. 116).

**2002**

On August 7, Plaintiff was excused from work for a week so that her sore back and neck could recover. She was prescribed a pain reliever and muscle relaxer (Tr. 232). The magnetic resonance imaging (MRI) test administered on August 27 showed disc herniations at C4-5, mild to moderate stenosis at C4-5 and C6-7 and moderate stenosis at C5-C6 (Tr. 149). When Plaintiff was examined by Dr. Brian F. Hoeflinger on September 6, he recommended physical therapy and a non-steroidal medication as a conservative treatment option (Tr. 136).

**2003**

On February 19, Plaintiff was diagnosed with depression and cervical stenosis (Tr. 221). On October 30, Plaintiff was injected with a corticosteroid to treat muscle spasms and neck pain (Tr. 220).

3

On December 23, Dr. Gary W. Hinzman opined that Plaintiff could occasionally lift and/or carry approximately fifty pounds, frequently lift and/or carry twenty-five pounds, stand and/or walk about six hours in an eight-hour workday, sit for a total of six hours in an eight-hour workday and push and/or pull in an unlimited manner (Tr. 126). Plaintiff could occasionally climb using a ladder/rope/scaffold. Otherwise, Plaintiff had no manipulative, visual, communicative or environmental limitations (Tr. 127- 129).

**2004**

Plaintiff was treated for muscle spasm on February 6 (Tr. 218). Plaintiff was continued on her medications on July 6 (Tr. 214). In August and November, Plaintiff was injected with a corticosteroid to treat neck pain and spasms (Tr. 203-204, 210). On November 19 Plaintiff underwent an MRI during which diffuse bulging with superimposed disc protrusions and diffuse bulging at the C4 interspace asymmetrically were noted (Tr. 160).

Dr. Brian F. Hoeflinger's interpretation of radiographic imaging of Plaintiff's cervical spine that was administered on December 13, revealed disc herniations at C5-6 and shallow disc herniations at C4-5 and C6-7. The herniations at C5-6 resulted in underlying narrowing of the spinal canal and compression of the spinal cord (Tr. 261). The cervical computed tomography (CT) scan administered on December 20 showed spinal stenosis exacerbated by the congenital narrowing of the anterior/posterior dimension and disc protrusion at C6-7 (Tr. 180). On December 21, Dr. Jonathan Yobbagy determined that the spurs and discs at C4-5 of Plaintiff's cervical spine, compressed the thecal sac and possibly the emerging left C-5 nerve root sleeve (Tr. 179). Finally on December 27, Dr. Hoeflinger found that Plaintiff's cervical spine showed a loss of disk height at C4-5 and C5-6 (Tr. 170). He removed a herniated disk fragment, a portion of the vertebra was fused and plated at C5-6 and C6-7 of the spine (Tr. 165, 257).

**2005**

Plaintiff complained to Dr. Hoeflinger on January 24 that she had unsteadiness of gait (Tr. 257). There was a mild C4-5 degenerative change with spurring. However, the alignment of Plaintiff's cervical spine was normal (Tr. 265).

On April 1, Plaintiff had minimal remaining discomfort resulting from the fusion surgery performed in December 2004 (Tr. 256). On April 6, Plaintiff was given samples of medication to treat bronchitis and depression (Tr. 196). The diagnostic assessment conducted on April 15, 2005, by a licensed chemical dependency counselor (LICDC), revealed that Plaintiff suffered with major depressive disorder, some impairment in reality testing or communication and major impairment in work or school, family relations, judgment thinking or mood (Tr. 270, 271). The LICDC opined that Plaintiff would have some moderate to serious symptoms in social, occupational or school functioning for at least one year (Tr. 271).

On May 17, Dr. Lynne B. Torello opined that Plaintiff could occasionally lift and/or carry approximately twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk about six hours in an eight-hour workday, sit for a total

4

of six hours in an eight-hour workday and push and/or pull only in the upper extremities (Tr. 154). Dr. Torello found that Plaintiff's manipulative limitations on her right side interfered with her ability to reach, handle, finger and feel (Tr. 155). No visual or communicative limitations were established. Plaintiff was instructed to avoid all exposure to hazards (Tr. 156).

Plaintiff was given an injection on May 18 (Tr. 194-195). On August 12, Plaintiff complained of neck and low back pain. The screws implanted during the fusion surgery were well placed and the spine alignment was satisfactory (Tr. 238). Plaintiff was prescribed pain medication and a muscle relaxer (Tr. 190).

In November, a CT of Plaintiff's abdomen and pelvis revealed no evidence of urinary tract abnormality or stone disease. Dr. Daniel Dessner observed a cystic lesion on Plaintiff's lower pelvis and suggested that a pelvic ultra sound might be helpful for further characterization (Tr. 236-237). Also in November, Plaintiff was treated for congestion, wheezing and coughing with an antibiotic and cough suppressant (Tr. 186-187).

**2006**

Plaintiff was given an injection on February 3 (Tr. 184). On March 3, a paraspinal muscle injection was administered to treat Plaintiff's back and neck pain resulting from migraine headaches (Tr. 273, 275).

R&R, Doc. 21 at 2-8.

Magistrate Judge Armstrong recommends that this Court affirm the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 416(i), 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq.

Plaintiff filed a timely objection to the R&R on July 29, 2008 requesting that this Court not adopt the R&R, but remand for proper adjudication. Doc 22 at 1. For the following reasons, this Court agrees with the Magistrate Judge's findings that the Commissioner's denial of Plaintiff's application is supported by substantial evidence and, therefore, hereby adopts the recommendation in full. Doc. 21.

**II. Standard of Review**

5

**A. Review of an R&R**

Any party may object to a magistrate judge's proposed findings, recommendations, or report made pursuant to Fed. R. Civ. P. 72(b). The district judge to whom the case was assigned may review a report or specified proposed findings or recommendations of the magistrate judge, to which proper objection is made, and may accept, reject, or modify in whole or in part the findings or recommendations of the magistrate judge. Fed. R. Civ. P. 72.3(b). This Court has reviewed the findings of the Magistrate Judge *de novo*. *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981).

**B. Disability standard**

A claimant is entitled to receive Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505; *see id.* § 416.905.

A five-step sequential process, 20 C.F.R. § 404.1520, is employed by the ALJ to determine whether a claimant has a valid disability:

> First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. . . . Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (citing *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001)). If a claimant is found to be disabled or not disabled at any point in the evaluation process, the determination is made without completing the remaining steps. 20 C.F.R. § 404.1520(a).

"During the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five." *Walters v. Commissioner of Social Secuirty*, 127 F.3d 525, 529 (6th Cir. 1997) (citing *Young v. Secretary of Health & Human Services*, 925 F.2d 146, 148 (6th Cir. 1990)).

### C. Review of Commissioner's decision

The standard of review described by the Magistrate Judge is hereby adopted as follows:

> Judicial review of the Commissioner's decisions is limited to determining whether such decision is supported by substantial evidence and whether the Commissioner employed the proper legal standards. [*Cutlip v. Secretary of Health and Human Services*, 25 F. 3d 284, 286 (6th Cir. 1994)] (citing *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* (citing *Kirk v. Secretary of Health & Human Services*, 667 F.2d 524, 535 (6th Cir. 1981) *cert. denied*, 103 S. Ct. 2428 (1983)). The reviewing court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Id.* (*citing Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).
> In determining the existence of substantial evidence, the reviewing court must examine the administrative record as a whole. *Id.* (citing *Kirk*, 667 F.2d at 536). If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *See Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).

### III. Discussion

Plaintiff argues that the Magistrate Judge erred by affirming ALJ's decision which, Plaintiff claims, failed to: (1) give Dr. Akpunonu's opinion appropriate weight; (2) address the manipulative limitations identified by Dr. Torello; (3) address the manipulative limitations attributed to Plaintiff's spinal cord effacement; (4) address whether the surveillance system monitor job exists in significant numbers; and (5) apply the proper standard to evaluate Plaintiff's credibility.

**A. The Magistrate Judge did not err in her analysis of Dr. Akpunonu's opinion.**

Plaintiff argues that the Magistrate Judge erred by failing to give Dr. Akpunonu's opinion at least "significant weight." Doc. 22 at 2. Specifically, Plaintiff maintains that the ALJ's decision failed to adequately address the opinion of Dr. Akpunonu and that the Magistrate Judge erred by "essentially provid[ing] the analysis missing from the Commissioner's final decision." *Id*.

The treating physician rule requires greater deference to be given to the opinions of treating physicians than to those of non-treating physicians. *See* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004). Treating physicians are "the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." 20 C.F.R. § 416.927(d)(2). Their opinions are generally accorded more weight than those of non-treating physicians. *Id.* Thus, if the opinion of the treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other

8

substantial evidence in [the] case record," then it will be accorded controlling weight. *Wilson*, 378 F.3d at 544.

When the treating physician's opinion is not controlling, the ALJ must consider several factors in determining how much weight is appropriate, including: (1) the length, frequency, nature, and extent of the treatment relationship; (2) the supportability and consistency of the physician's conclusions; (3) the specialization of the physician; and (4) any other relevant factors. *Id.* Notwithstanding its non-controlling status, there remains a rebuttable presumption that the opinion of a treating physician is entitled to great deference. SSR 96-2p, 1996 WL 374188 at *4.

Furthermore, the ALJ must provide "good reasons" for discounting treating physicians' opinions. *Id.* at *5. The good reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*. The purpose of this procedural aspect of the treating physician rule is that it "let[s] claimants understand the disposition of their cases," and "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

Here, the ALJ did not give controlling weight to Dr. Akpunonu's opinion. First, the ALJ considered the length, frequency, nature, and extent of the treatment relationship. In the first sentence of the ALJ's decision regarding Dr. Akpunonu, the ALJ cited to the page of Dr. Akpunonu's report that indicated that the length of the treatment relationship was five year. The ALJ addressed the extent and nature of Dr. Akpunonu's treatment relationship when the ALJ compared Dr. Akpunono's and Dr. Hoeflinger's findings, which this opinion discusses below.

9

Second, the ALJ considered the supportability and consistency of the physician's conclusions. The following portion of the ALJ's decision is an example:

> . . . Dr. Akpunonu did not cite to any specific diagnostic test results or clinical exam findings to support these opinions as they are very brief notes on his prescribed pad. Further, Dr. Akpunonu did not appear to take his own doubts about the claimant's exaggerated complaints (see Ex. 5F, page 2) into account when stating the claimant could not work at any job. The judge does not find the claimant to be reliable in her allegations of pain and limitations. Dr. Akpunonu also said that the claimant could not do any manipulation, pushing, and pulling with the right dominant hand (Ex. 5F), but this is inconsistent with the claimant's admitted activities of driving, cleaning, and cooking.

Tr. at 18. Third, the ALJ noted that Dr. Akpunonu was not a specialist, which is important because as a non-specialist Dr. Akpunonu is limited in offering treatment in specialized areas. The ALJ compared Dr. Akpunonu and Dr. Hoeflinger regarding the issues of specialization and the extent and nature of their treatment relationship with Plaintiff. Notably, Dr. Hoeflinger, is a specialist and Dr. Akpunonu is not. The ALJ observed that "Dr. Hoeflinger's treatment notes reflect better functioning than Dr. Akpunonu suggests," and that Dr. Hoeflinger's "clinical findings are more consistent with the stated residual functional capacity." "Dr. Hoeflinger has never said that the claimant could not do any work. While the claimant is significantly limited in using her upper extremities, these activities are not completely precluded." The medical records support this conclusion. *See* Tr. at 238-40, 250. The combination of these factors made it clear to the Magistrate, and makes it clear to this Court, that the ALJ was justified in not accounting controlling weight to Dr. Akpunonu's opinions.

The Court now turns to whether the ALJ provided "good reasons" for discounting Dr. Akpunonu's opinions. *See* SSR 96-2p, 1996 WL 374188, at *5. In *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 245-46 (6th Cir. 2007), the Sixth Circuit concluded that the "good

reasons" standard was not met when the ALJ's decision only noted that "the record does not support the limitations of the severity suggested by Dr. Stein." In *Stiltner v. Commissioner of Social Security*, 244 Fed. Appx. 685, 685 (6th Cir. 2007), the Sixth Circuit concluded that the "good reasons" standard was met when the ALJ noted that controlling weight was not given to a treating physician who relied only the results of an eight month old MRI and EMG tests and, against the weight of the evidence, repeatedly stated that claimant was "totally disabled."

Here, like in *Stiltner*, the ALJ offered a full explanation for why controlling weight was not given to Dr. Akpunonu's opinions. The reasons offered by the ALJ were that: (1) Dr. Akpunonu failed to cite to any specific diagnostic test results to support his opinions; (2) the claimant was not reliable in her allegations of pain and limitations; (3) Dr. Akpunonu's opinion regarding Plaintiff's manipulation, pushing, and pulling was inconsistent with the claimant's admitted activities of driving, cleaning, and cooking; and (4) Dr. Hoeflinger's findings were more consistent with the Plaintiff's residual functional capacity. The Court concludes that the ALJ provided "good reasons" for discounting Dr. Akpunonu's opinions because the reasons are sufficiently specific to make clear the weight the ALJ gave to Dr. Akpunonu's medical opinion and the reasons for that weight.

**B. The Magistrate Judge did not err in her analysis of the state agency consultants' opinions.**

An ALJ must consider opinions of state agency medical consultants. 20 C.F.R. § 404.1527(f)(2). While an ALJ is "not bound by any findings made by State agency" consultants, an ALJ "must consider [their] findings . . . as opinion evidence, except for the ultimate determination" about whether the plaintiff is disabled. *Id.* at 404.1527(f)(2)(i). When an ALJ considers findings of a state agency consultant, the ALJ "may not ignore these opinions and must

11

explain the weight given to these opinions in their decisions." SSR 96-6p, 1996 WL 374180, *1 (July 2, 1996).

### 1. The ALJ's decision considered Dr. Torello's opinion.

Plaintiff does not dispute that the ALJ's decision addressed Dr. Gary Hinzman's opinion. However, Plaintiff maintains that the ALJ's decision failed to consider Dr. Lynne B. Torello's opinion, which is the state agency consultant's opinion that found Plaintiff to have manipulative limitations. Doc. 22 at 4. Plaintiff attributes this to the fact that the ALJ's decision cited to Dr. Hinzman's report (Exhibit 3F) but not to Dr. Torello's report (Exhibit 7F).

Plaintiff's objection is not well taken. While it is true that there is no precise citation to Dr. Torello's report, the decision refers to the "State Agency *physicians*" in the plural form when addressing the state agency consultants' opinions. Tr. at 18 (emphasis added); *see also id.* at 16 (referring to "State Agency *physicans*" in the plural form when discussing Plaintiff's credibility). Additionally, the decision explains the reasons for discounting the state agency consultants' opinions. The ALJ need not mention the state agency physicians by name. Thus, the ALJ considered Dr. Torello's report in forming the decision.

### 2. The ALJ's decision sufficiently explains the weight given to Dr. Torello's opinion.

Plaintiff argues that the Magistrate Judge erred in affirming the ALJ's decision discounting Dr. Torello's opinion for two reasons. First, Plaintiff argues that the ALJ's decision failed to address Dr. Torello's opinion regarding Plaintiff's manipulative limitations. Dr. Torello opined that Plaintiff could occasionally reach overhead, handle, finger, or feel on his right side. Second, Plaintiff argues that the ALJ's decision failed to consider Dr. Torello's opinion that Plaintiff's manipulation limitations are attributed to the spinal cord effacement.

12

The ALJ may not ignore a state agency physician's opinion and must explain the weight given to the opinion. *See* SSR 96-6p, 1996 WL 374180, *1 (July 2, 1996). This Court recognizes that "[i]n appropriate circumstances, opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." *Id.* at *3. For example, this may occur if "the State agency medical . . . consultant's opinion is based on a review of a complete case record that . . . provides more detailed and comprehensive information than what was available to the individual's treating source." *Id.* This is not the case here. In the instant case, after considering Dr. Torello's opinion, the ALJ concluded that the "State Agency physicians neither treated nor examined the claimant personally so the judge disagrees with their conclusion." Also, the ALJ's decision stated that "[a]dditional evidence submitted at the hearing level supports the conclusion that the claimant's ability to lift, carry, and manipulate are more limited than the State Agency thought." Tr. at 18. Furthermore, the medical records do not support Dr. Torello's conclusions regarding Plaintiff's limited manipulation or Plaintiff's alleged spinal chord effacement. *See* Tr. at 238-40, 250 (showing normal results for diagnostic tests on Plaintiff's cervical spine, knee, wrist, and urine); *see also* Tr. at 187-189, 195, 197, 202, 206, 220, 275 (showing no evidence of edema or cyanosis). Such findings suggest that the ALJ considered Dr. Torello's opinion and justifiably did not attribute much weight to the opinion.

**C. The Magistrate Judge did not err in her analysis of whether jobs exist in significant numbers**.

Plaintiff argues that the Magistrate Judge erred in affirming the ALJ's decision which, Plaintiff claims, made no finding as to whether the surveillance system monitor job, on its own, exists in significant numbers. Doc 22 at 5.

Work exists in the national economy when it exists in a significant number of jobs (in one or more occupations) either in the region where a claimant lives or in several other regions of the country. 20 C.F.R. § 404.1566(a, b). The job must have requirements which the claimant is able to meet with his physical or mental abilities and vocational qualifications. *Id.* at § 404.1566(b); 29 C.F.R. § 416.966(b). It does not matter whether work exists in the immediate area where the claimant lives, whether there is a specific job vacancy, or whether the claimant would actually be hired. *Id.* at § 404.1566(a)(1-3).

Here, the vocational expert testified that given Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff could perform occupations such as (1) surveillance system monitor (750 - 1,000 jobs in the region); (2) hand mounter of photographic products (200-250 jobs); and (3) microfilm document preparer (500 jobs). Plaintiff objects to the second two jobs and claims he cannot preform them because they would require Plaintiff's to reach and handle. This Court has already concluded that the ALJ appropriately discounted the state agency physician's opinion regarding Plaintiff's manipulation limitations. The Court find the jobs, taken together, to exist in significant numbers.

However, even if the Court assumes, *arguendo*, that surveillance system monitoring is the only occupation that Plaintiff could perform, the Court does not waiver in its conclusion that work exists in significant numbers.

The Sixth Circuit has explained that "[a] judge should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of traveling to engage in the assigned work;

14

the isolated nature of the jobs; the types and availability of such work, and so on." *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). The decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation. *Id.*

Here, Plaintiff has worked in the past as a cosmetologist, trimmer, fast food worker, and file clerk. Tr. at 80. Plaintiff is familiar with filing paperwork and computer filing. *Id.* at 83. Accepting, *arguendo*, Plaintiff's claim that only 750-1,000 jobs are available to her, this Court concludes that jobs exist in significant numbers. *See Jenkins v. Bowen* 861 F.2d 1083 (6th Cir. 1988) (concluding that 500 jobs represented a significant number).

**D. The Magistrate did not err in her analysis of the ALJ's credibility analysis.**

Plaintiff disagrees with the ALJ's evaluation of Plaintiff's credibility. Plaintiff argues that the Magistrate Judge erred in affirming the ALJ's decision which allegedly relies on an improper reliability standard and creates a presumption against credibility. In particular, Plaintiff takes issue with the following portion of the ALJ's decision:

> The reliability of testimony is fragile in the context of secondary gain. The prospect of receiving a reward for a false presentation or from exaggeration is an understandable motivation that must be considered in evaluation of any testimony. However, when the reward is as direct as it is with disability benefits, a claimant must avoid the appearance of exaggeration and must be as candid and sober as possible.

Tr. 15-16.

An ALJ may consider the credibility of a claimant when making a determination of disability. *See Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). The ALJ may discount a claimant's credibility when there are "contradictions among the medical reports, claimant's testimony, and other evidence." *Id.* "An ALJ may also consider household and

15

social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments." *Id.* at 532. "Since credibility, especially with alleged pain, is crucial to resolution of the claim, the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Secretary of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)).

Sixth Circuit guidance gives great deference to the credibility determinations of ALJs. In *Gaskin v. Commissioner of Social Security*, the court explained that "[i]t is well-established that an ALJ's credibility determinations are entitled to great deference; our review is limited to deciding whether an ALJ's explanations for discrediting a claimant's testimony 'are reasonable and supported by substantial evidence in the record.'" 280 Fed. Appx. 472, 5 (6th Cir. 2008) (citing *Jones v. Commissioner of Social Security* 336 F.3d 469, 476 (6th Cir. 2003)).

This Court must give due weight to the ALJ's credibility determination. The ALJ found Plaintiff's explanations to be "complex and exaggerated presentations of emotional distress and physical dysfunction that are inconsistent in the record." Tr. at 16. The ALJ explained that, at the hearing, Plaintiff was emotional and disappointed due to failed treatment attempts but that the medical findings do not support the severity that Plaintiff reported. For example, Plaintiff's complaints of physical pain were out of proportion to the objective findings of physicians. *Id.* The ALJ also explained inconsistencies between Plaintiff's statements made to Dr. Hoeflinger and Plaintiff's other testimony. Based on Plaintiff's inconsistent complaints, the ALJ concluded that Plaintiff exaggerated complaints of walking/falling and Plaintiff's impaired ability to look downward.

Reviewing the ALJ's decision under the substantial evidence standard, the ALJ's decision is rational. In this circumstance, it is not the place of this Court to reweigh the evidence or make credibility determinations. The ALJ's conclusions regarding Plaintiff's credibility were supported by the ALJ's observations during the hearing and grounded in information from Plaintiff's medical record.

**IV. Conclusion**

For the reasons discussed herein, this Court hereby adopts the Report and Recommendation of the Magistrate Judge in its entirety (Doc. 21). The decision of the Commissioner of Social Security is affirmed.

IT IS SO ORDERED.

                                                 s/ *David A. Katz*
                                                 DAVID A. KATZ
                                                 U. S. DISTRICT JUDGE